| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Tony Van Bui,<br><br>    Defendant. | Crim. No. 10-311 (DWF/JJK)<br><br>**REPORT AND RECOMMENDATION** |

LeeAnn K. Bell, Esq., Assistant United States Attorney, counsel for Plaintiff.

Manvir K. Atwal, Esq., Assistant Public Defender, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

    This matter is before the Court on Defendant Tony Van Bui's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 16). This Court held a hearing on the motion on December 10, 2010, and received three exhibits from the Government, including three search warrants. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons stated below, this Court recommends that Defendant's motion be denied.

## BACKGROUND

### The Search Warrants

On March 5, 2010, Dakota County District Court Judge Carol A. Hooten issued a warrant to search Defendant and his vehicle, a 2005 white four-door Lexus E33 bearing MN plate XXX-XXX. (Hr'g Ex. No. 1.) The search warrant was issued on the basis of probable cause contained in the application for search warrant and supporting affidavit of Deputy Christofer Nybeck, from the Hennepin County Sheriff's Office. (*Id.*) The searches of Defendant and his vehicle were conducted on March 10, 2010. (*Id.*) During the course of the search, nine pounds of marijuana, four cell phones, miscellaneous paperwork, and a wallet with $586 were seized by the Government. (*Id.*)

Also on March 10, 2010, Defendant was arrested in Burnsville, MN. (Hr'g. Ex. No. 2.) Defendant was followed from XXXX Lino Lakes, MN ("address A") prior to his arrest. That same day, Judge Hooten issued a second warrant to search address A. (*Id.*) Like the first search warrant, this search warrant was issued on the basis of probable cause contained in the application for search warrant and supporting affidavit of Deputy Nybeck. (*Id.*) During the course of the search, numerous packages of marijuana, various large sums of cash, documents, a digital scale, and a computer tower, among other things, were seized by the Government. (*Id.*) As a result of the March 10, 2010 searches of Defendant, his car, and his residence, law-enforcement officers recovered approximately 185 pounds of high grade marijuana, $176,000, and extensive

narcotics ledger detailing customers, sales, quantities and profits, along with identification for Defendant. (H'rg. Ex. No. 3.)

Then, on March 24, 2010, a third search warrant was issued, also based on the probable cause contained in the application and Deputy Nybeck's supporting affidavit. (Hr'g. Ex. No. 3.) That warrant was to search any names phone numbers, messages, and other electronic information stored within the electronic equipment of Defendant's cell phone, which was recovered from Defendant at the time of his arrest on March 10, 2010. (*Id.*)

Based on the above, Defendant Bui was subsequently indicted on one count of possession with intent to distribute marijuana. (Doc. No. 1.) The Indictment charges Defendant with knowingly and intentionally possessing with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). (*Id.*)

## DISCUSSION

**I. Motion to Suppress Evidence Obtained from Search and Seizure**

Defendant Bui filed a Motion to Suppress Evidence Obtained as a Result of Search and Seizure. (Doc. No. 16.) Defendant's counsel asked this Court to conduct a "four corners" review of the search warrants, but identified no particular deficiency of the supporting affidavit that established the probable cause required to issue the warrants. Neither the Defendant nor the Government requested post-hearing briefing on the issue. Exhibits were received and admitted into evidence.

### A. Probable Cause

This Court concludes that the search warrants for Defendant, his car, and his residence were based on probable cause, as set forth in the warrant applications and the underlying affidavits. "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Illinois* v. *Gates*, 462 U.S. 213, 236 (1983)). When determining whether probable cause exists, a court does not independently evaluate each piece of information, but, rather, considers all of the facts for their cumulative meaning. *United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002). The task of a court issuing a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also United States v. Salter*, 358 F.3d 1080, 1084 (8th Cir. 2004). "In determining whether probable cause exists, [the courts] recognize that the police possess specialized law enforcement experience and thus may draw reasonable inferences of criminal activity from circumstances which the general public may find innocuous." *United States v. Mendoza,* 421 F.3d 663, 667 (8th Cir. 2005). Courts should not review search warrants in a hyper-technical fashion. *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006).

In reviewing the decision of the issuing court, this Court must ensure that the court "'had a substantial basis for . . . conclud[ing] that probable cause exists.'" *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003) (quoting *Gates*, 462 U.S. at 238-39). Because reasonable minds may differ on whether a particular search-warrant affidavit establishes probable cause, the issuing court's determination is accorded great deference. *United States v. Wajda*, 810 F.2d 754, 760 (8th Cir. 1987) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

### A.     March 5, 2010 Search Warrant

The detailed affidavit of Deputy Nybeck, dated March 5, 2010, describes the affiant's basis for believing that Defendant was involved in drug trafficking. (Hr'g. Ex. No. 1.) For example, the Affidavit describes the information obtained by Nybeck through a confidential reliable informant ("CRI"), a cooperating witness, other officers, his own review of documents and surveillance of the Defendant and his vehicle. (*Id.*) The affidavit states that the affiant worked with this particular CRI for over two years, and that the CRI's information has been independently corroborated and found to be true and accurate. (*Id.*) Specifically, the CRI informed Deputy Nybeck about an Asian female, known as Trang Ngyuen ("Ngyuen") who sells large amounts of expensive high-grade marijuana from her residence. (*Id.*) In March 2009, a cooperating witness confirmed CRI's information regarding Ngyuen's drug trafficking activities, provided additional information regarding Ngyun's address and car, and positively identified Ngyuen as the individual who sells large amounts of expensive marijuana. (*Id.*) On

5

numerous occasions in the spring and summer of 2009, Deputy Nybeck conducted surveillance of Ngyuen's residence at XXXX Burnsville, MN, and observed leaving and arriving a car described by the cooperating witness, a gold four-door Honda Accord. (*Id.*) This car was driven by an Asian female that matched the description of Ngyuen. (*Id.*) Then, in the winter of 2010, Deputy Nybeck showed a picture of Ngyuen to the CRI, who positively identified it as one of Ngyuen, an individual who sells large amounts of high grade marijuana for cash. (*Id.*) Deputy Nybeck and other law enforcement officers conducted extensive surveillance on Ngyuen, her car and her residence. (*Id.*) Ultimately, within 72 hours of the March 5, 2010 search warrant, law enforcement officers again established surveillance on Ngyuen, her residence, and her vehicle. (*Id.*) This time, Deputy Nybeck instructed the CRI to place a call to Ngyuen and order a specific amount of marijuana. (*Id.*) Ngyuen told the CRI that Ngyuen had to meet with her source first. (*Id.*) Ngyuen then left her house, entered her car, drove to a parking lot in Burnsville, and parked next to a white 2005 four-door Lexus E33 with a MN license plate XXX-XXX. (*Id.*) Ngyuen exited her vehicle and leaned half way into the front passenger window of XXX-XXX. (*Id.*) Nguyen then re-entered her car and drove directly back to XXXX Burnsville, MN, and went inside her house. (*Id.*) Shortly thereafter, the CRI met with Ngyuen inside Ngyuen's house, and upon leaving Ngyuen's house immediately met with Deputy Nybeck. (*Id.*) The CRI told Nybeck that Ngyuen gave him marijuana in exchange for money. (*Id.*) Based on this information, Nybeck believed that

Ngyuen's source for marijuana supply was the driver and sole occupant of the car with license plate XXX-XXX. (*Id.*) The driver was an Asian male between the ages of 35 and 40 years of age with spikey black hair. After conducting surveillance on the car with license plate XXX-XXX, the police officers observed the driver and made a positive identification. (*Id.*) The following day, Deputy Nybeck learned that the car is currently registered to XXXX Lino Lakes, MN ("address B").[1] (*Id.*) He then checked for all current Minnesota drivers' licenses for Asian males at this address. (*Id.*) Only one individual matched the description: Tony Van Bui. (*Id.*) Accordingly, Deputy Nybeck believed that it was Tony Van Bui who drove his car with license plate XXX-XXX to the parking lot in Burnsville, MN and provided Ngyuen with marijuana. (*Id.*) Based on this, Nybeck requested a night-time "knock-and-announce" narcotics related search warrant to be issued for the body of Defendant Bui and his car.

Based on these facts, and the experience and training of Deputy Nybeck, there was probable cause to believe that Defendant Bui and his car would contain evidence of drug trafficking activity. Accordingly, this Court concludes that the search warrant here was issued upon a cogent showing of probable cause.

---

[1] Address A and address B are located on the same street in Lino Lakes, MN.

### B. March 10, 2010 Search Warrant

After the suspected marijuana sale transaction between Ngyuen and Defendant described above took place, the officers continued surveillance on Defendant and his car. (Hr'g. Ex. No. 2.) Deputy Nybeck also learned that the registered owner of Lexus XXX-XXX is Chee Fung and that she resides at address A, Lino Lakes, MN. (*Id.*) And according to the Anoka County property tax database, the tax payer and owner of both address A and B properties in Lino Lakes, MN was Tom Bui. (*Id.*) Deputy Nybeck and other officers then conducted extensive surveillance on address A. Among other things, they saw Defendant's Lexus there on different occasions and different times of the day. (*Id.*) And, at one point, the officers followed Defendant and his car from address A to a restaurant on Nicollet Ave in Minneapolis, where Defendant conducted a suspected narcotics sale in the restaurant parking lot. (*Id.*) This was consistent with Defendant's conduct uncovered through other surveillance: Defendant would park and meet unidentified people in residential areas in his Lexus for a short period of time and then drive away to the next residence. (*Id.*)

The March 5, 2010 search warrant described above was executed on March 10, 2010, which led to Defendant's arrest and the warrant application for the search of Defendant's residence at address A. (*Id.*) On March 10, 2010, the officers observed Defendant back up his car to the address A residence and put multiple large bags into the trunk of his car. (*Id.*) Defendant then drove to the Richfield Target store parking lot, exited his car, and removed a bag from the

trunk of his car. (*Id.*) Defendant then made contact with another vehicle that pulled up next to him and handed the bag off to the driver of that car. (*Id.*) Defendant then left the Target parking lot and drove to XXXX Burnsville, MN, where Deputy Nybeck and other officers executed various search warrants, including the March 5, 2010 warrant for the search of Defendant and his car. (*Id.*) Approximately six one-pound bags of marijuana and four cell phones were recovered from Defendant and his car. (*Id.*) Ultimately, Defendant was arrested around 6:15 pm that night. (*Id.*) Based on these facts, Deputy Nybeck believed that additional large amounts of marijuana would be found at address A. (*Id.*) Deputy Nybeck further stated that he "knows from training and experience that individuals that sell narcotics often store their money and proceeds inside their residence to avoid detection . . . and believes that this residence contain prerecorded Hennepin County Sheriff's Office narcotics buy fund money and narcotics related documentation, paperwork and records. . ." (*Id.*)

This Court concludes that, as with the March 5, 2010 search warrant, the warrant to search address A was based on sufficient probable cause.

### C. March 24, 2010 Search Warrant

This Court also finds that there was sufficient probable cause to issue a warrant to search a cell phone recovered during the March 10, 2010 search of Defendant's body. (H'rg. Ex. No. 3.) Among other things, the affiant verified that there were multiple incoming and outgoing calls and text messages between Defendant and Ngyuen, the second suspect in this marijuana distribution case.

9

(*Id.*) Further, Deputy Nybeck indicated that he believed that those calls were narcotics-related. (*Id.*)

### D. Leon Good-faith Exception

Even if probable cause did not exist, there were facially valid warrants, and therefore the good-faith exception to the exclusionary rule, established in *United States v. Leon*, 468 U.S. 897 (1984), would have to be considered. "Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (alteration in original) (quotations omitted). "When assessing the objective [reasonableness] of police officers executing a warrant, [the Court] must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Id.* at 431 (alteration in original) (quotations omitted).

Here, this Court concludes that even if probable cause did not exist, the good-faith exception would apply. There is no evidence to suggest that the officer's reliance on the warrants was not in good faith, nor is there evidence that the officer's reliance was not reasonable. Thus, the *Leon* good-faith exception provides an alternative basis for the conclusion that the evidence seized as a

result of the execution of the search warrants need not be suppressed.

Therefore, this Court recommends that Defendant's motion to suppress evidence be denied.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 16), be **DENIED.**


Date: December 27, 2010

> *s/Jeffrey J. Keyes*
> JEFFREY J. KEYES
> United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 3, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **seven days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely

order and file a complete transcript of the hearing within **ten days** of receipt of the Report.